## Case No. 16,360.

### UNITED STATES v. The SOUTH CAROLINA.

[Fish. Pr. Cas. 63.]

District Court, D. Pennsylvania. Feb. 26, 1813.

CONDEMNATION OF PRIZE—LICENSE FROM ENEMY.

[1. Where no prevarication or other improper conduct on the part of the captured vessel is shown, the question of condemnation of the vessel is to be determined from the papers found on board.]

[2. A United States vessel is not subject to condemnation because it carries a special pass or license from the enemy or the enemy's agent.]

In admiralty.

PETERS, District Judge. This vessel is, indisputably, an American ship, belonging, bona fide to a native citizen of the United States, John C. Stocker, Jr., who has interposed his claim. There is not among the papers found on board, nor according to the deposition of the master, Gaul, on his examination in preparatorio, was there at any time, any paper or document, evidencing any cause of suspicion that this vessel had been, or at the time of her capture, on the 9th November last, was, in the prosecution of any unlawful trade. The master, Gaul, swears that all the papers were delivered up, none having been burnt, destroyed, or concealed. The claimant, in his affidavit annexed to his claim, swears that the vessel was chartered to Willing & Francis, known to be native citizens of the United States, for a voyage from Philadelphia to Lisbon, where she arrived with a cargo of flour, corn, &c. wholly the property of American citizens, or of Portuguese subjects, as he believed, at the time of its shipment, and still doth believe. He states that he had no participation in any application for a passport or license from the British government; but believes there was put on board by the shippers, a letter of request, given by Mr. Foster, the late British minister, that she might be permitted to pass unmolested, but which he, the claimaint, never saw. He swears that no enemies of the United States, their agents, &c. ever had, nor have now, any right, or property, in the vessel; and adds his belief, that the cargo was the property of Willing & Francis, or of Portuguese subjects.

The outward cargo was, as the master swears, delivered at Lisbon to a Mr. Sampayo, a Portuguese subject. The vessel was on her return from Lisbon to Philadelphia, in ballast, when captured.

Among the papers found on board, and delivered into the custody of the clerk of this court, by the captor, was a pass, commonly called a "Foster," in the following words, &c.: "126. By Augustus John Foster, Esq. his Britannic majesty's envoy extraordinary, and minister plenipotentiary to the United States of America. These are to request and require all whom it may concern, to allow the brig South Carolina, of register $193^{30}/_{95}$ tons burthen, or thereabouts, laden with flour and corn, commanded by Richard Gaul, and bound to Lisbon from Philadelphia, and to return ballasted with sand, or salt, into a port of the United States—to pass unmolested. Given at New York, under my hand and seal this eighth day of July, in the year of our Lord one thousand eight hundred and twelve. (Signed) Aug. J. Foster. (Seal.)"

There does not appear to me, on account of this pass, or on any other consideration, any cause for the capture of this vessel. Farther proof is not necessary; as the whole case, on the face of it, is fair, and bona fide. If there were grounds of suspicion, of any decided nature as to the cause on the outward voyage, because it appears by the examination of Captain Gaul, that it was consigned to a house in Lisbon, or person of a name, said to be connected with the enemy; nothing appeared at the time of capture, or doth now appear, to warrant the court in the exercise of its discretion in requiring farther proof. The owner of the vessel had no knowledge of or concern with, the character of the consignee, nor any interest in the cargo. Nor am I to presume any fraudulent transaction, even if it were proved that the consignee was, in other matters, connected in dealings in enemy supplies. The cargo in this case, is alleged (and nothing appears to the contrary) to have been the property of citizens of the United States, or of Portuguese subjects, in amity; and its destination fair and lawful. It is only from the papers found on board, where no prevarication, or other improper conduct, on the part of the captured, is evidenced, that I am to form an opinion. No false or colourable papers, nor any misconduct in the officers or crew of the South Carolina, at the time of capture or since, are shown. A captor is not justifiable in sending in the vessel of a fellow-citizen, or a friend, under bare suspicions, whereof no proofs appear at the time. Nor is he entitled to farther or any proof, when all the papers, and the whole conduct of the captured are fair; and give no ground for warrantable suspicion of fraud. It cannot therefore, be on account of the circumstances mentioned, that this vessel is brought under the cognizance of the court.

It is entirely unnecessary for me to repeat my opinion as to Mr. Foster's pass; or, as it is called, "letter of request." On the policy of permitting, or forbidding, such, or any other passes, or licenses of any kind (other than such inhibited by our laws) I have no judicial opinion to give. The state of the world has rendered them common and familiar. Whatsoever articles, the indispensable demands of nations, though enemies, as the greatest number now are, require, they will obtain from each other in some way. If special passes or licenses are frowned on, they may promulgate general permissions to trade to places accessible to them, in designated articles necessary to them, free of capture from their cruisers. But these are considerations most proper for other departments of the government. I have only to decide on the lawfulness of their use by our ships. I have given, on former occasions, and repeat in this, my opinion, that our vessels are not subject to capture and confiscation by us, on account of the pass in question, or others similar thereto. Such passes are granted, it is true, for causes indirectly serviceable to the enemy, but under them, our ships may proceed innocently, as they do safely, to and from ports or places lawful to us.

It must have been generally known, and could not have been concealed from our cruisers, that enemy passes, to protect from capture our vessels sailing on lawful voyages, with cargoes belonging to our citizens, or neutrals, were allowed by the laws of nations, and are not contrary to our own municipal laws. It is alleged to have been an opinion entertained by the commanders of our cruisers, both public and private, that all licenses or passes, from the enemy or its agents, were unlawful; and on this account this vessel was sent in for adjudication. The worthy and respectable officer, who sent this vessel in, most undoubtedly pursued a conduct the least embarrassing and vexatious, when he ordered her into the port of her destination. It is therefore difficult for me to prevail on myself to give damages; as in cases in which they are not only retributive, but exemplary. Still however, the duty of courts is rigid and imperative. If the owner has suffered by the mistaken opinion of the captor, he ought to be retributed; at least so far, as to replace, or compensate any damage or loss, his vessel has sustained, by the capture and detention. Whether farther retribution shall be made, I shall leave to the judgment of the superior court; as I am given to understand an appeal will be entered; it having been, with no small reason, surmised, that I should decree restitution.

I decree restitution of the vessel, her tackle, apparel and furniture, with damages, to the extent I have stated, and costs. I cannot allow the captor his expenses, consistently with my view of the justice of the court.